FELICIA GILBERT (#276348)
MELISSA TRIBBLE (#339098)
Sanford Heisler Sharp, LLP
111 Sutter St., Suite 975
San Francisco, CA 94104
Telephone: (415) 795-2020
Email: fgilbert@sanfordheisler.com
Email: mtribble@sanfordheisler.com

MICHELE HAYDEL GEHRKE (#215647)
Reed Smith LLP
101 Second Street, Suite 1800
San Francisco, CA 94105
Telephone: (415) 543-8700
Email: mgehrke@reedsmith.com

SABA BIREDA (*pro hac vic*e)
JAMES HANNAWAY (*pro hac vice*)
Sanford Heisler Sharp, LLP
700 Pennsylvania Avenue S.E., Suite 300
Washington, DC 20003
Telephone: (202) 499-5200
Email: sbireda@sanfordheisler.com
Email: jhannaway@sanfordheisler.com

JILL S. VOROBIEV (*pro hac vice*)
Reed Smith LLP
10 South Wacker Drive
Chicago, IL 60606
Telephone: (312) 207-1000
Email: jvorobiev@reedsmith.com

EDWARD CHAPIN (#53287)
CARA VAN DORN (#321669)
Sanford Heisler Sharp, LLP
2550 Fifth Ave., 11th Floor
San Diego, CA 92103
Telephone: (619) 577-4253
Email: echapin@sanfordheisler.com
Email: cvandorn@sanfordheisler.com

AMANDA BROWN (*pro hac vice*)
Reed Smith LLP
2850 N. Harwood Street, Suite 1500
Dallas, TX 75201
Telephone: (469) 680-4232
Email: aebrown@reedsmith.com

*Attorneys for Defendant*

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALEX HORN, LANCE AYTMAN, AND KEITH HOOKER,<br><br>Plaintiffs,<br><br>v.<br><br>KRAFT HEINZ FOODS COMPANY LLC,<br><br>Defendant. | Case No. 1:21-cv-01258-JLT-BAM<br><br>**STIPULATION AND [~~PROPOSED~~] ORDER REGARDING PRODUCTION OF ELECTRONICALLY STORED INFORMATION ("ESI")**<br><br>District Judge: Jennifer L. Thurston<br>Magistrate Judge: Barbara A. McAuliffe<br>Complaint Filed: August 19, 2021<br>Trial Date: Not Set |

Plaintiffs Alex Horn, Lance Aytman, and Keith Hooker ("Plaintiffs") and Defendant Kraft Heinz Foods Company LLC ("Defendant") (collectively, the "Parties"), by and through their undersigned counsel, STIPULATE AND AGREE to the following Order for the production of Electronically Stored Information ("ESI") in the above-captioned matter (hereinafter, "this Order").

**I.      GENERAL**

1.      This Order shall govern the discovery of Electronically Stored Information ("ESI") in this case as a supplement to the Federal Rules of Civil Procedure ("Fed. R. Civ. P."), the Local Rules of the United States District Court for the Eastern District of California, this Court's Standing Order in Civil Cases, and any other applicable orders and rules.

2.      The Parties are aware of the importance the Court places on cooperation and commit to cooperate in good faith throughout the action.

3.      The Parties shall take reasonable steps to comply with the protocol set forth herein. The Parties agree to promptly alert all other Parties concerning any technical problems associated with complying with this Order. To the extent compliance with this Order imposes an undue burden, the Parties shall promptly confer in an effort to resolve the issue.

4.      Nothing in this Order shall supersede the provisions of any applicable Protective Order in this case, including but not limited to the May 19, 2022 Protective Order entered by the Court (Dkt. Nos.  40-41) (hereinafter, "the Protective Order").

5.      This Order applies to any third-party discovery, pursuant to Fed. R. Civ. P. 45, if agreed by the subpoena recipient. Nothing contained herein modifies Fed. R. Civ. P. 45 and, specifically, the provision of Fed. R. Civ. P. 45(d)(2)(B) regarding the effect of a written objection to inspection or copying of any or all of the designated materials or premises.

6.      In the event of remand or transfer to other courts, this Order will remain in effect in all respects, until adopted by the remand or transferee court or replaced by a successor order.

7.      Nothing in this Order shall be deemed to constitute a waiver of any objections a producing Party may have with respect to any discovery request nor shall it impose obligations on the Parties in excess of the requirements of the Fed. R. Civ. P 26, unless by mutual agreement of the Parties.

8.      Subject to the Parties' objections and responses to requests for production of Documents, all non-privileged Documents that are identified as proportional, relevant, and responsive to discovery requests shall be produced in the manner provided herein and consistent with the Protective Order.

9.      Consistent with their obligations under the applicable Federal Rules of Civil Procedure, the Court's Standing Orders, and the Local Rules for the Eastern District of California, the Parties will attempt to resolve disputes regarding the issues set forth herein prior to filing a motion with the Court, or otherwise seeking relief. If the Parties are unable to resolve the dispute after a good faith effort, the Parties may seek Court intervention in accordance with the Court's procedures.

**II.     DEFINITIONS**

1.      "**Document**" is defined to be synonymous in meaning and equal in scope to the usage of this term in Fed. R. Civ. P. 26 and 34. The term "Document" shall include Hard-Copy Documents, Electronic Documents, and ESI as defined herein.

2.      "**Electronic Document or Data**" mean a Document or Data existing in electronic form at the time of collection, including but not limited to: email or other means of electronic communications, word processing files (e.g., Microsoft Word), computer presentations (e.g., PowerPoint slides), spreadsheets (e.g., Excel), and image files (e.g., PDF and .JPG).

3.      "**Electronically Stored Information**"  or "**ESI**" as used herein has the  same meaning as in Fed. R. Civ. P. 26 and 34.

4.      "**Hard-Copy Document**" means a Document existing in paper form at the time of collection.

5.      "**Native Format**" means and refers to the format of ESI in which it was created, maintained, generated,  and/or used by  the producing Party in the usual course of the Party's business and the Party's regularly  conducted activities.

6.      "**Metadata**" means: (i) information embedded in or associated with a native file that is not ordinarily viewable or printable from the application that generated, edited, or  modified such native file which describes the characteristics, origins, usage, and/or validity of  the

electronic file; and/or, (ii) information generated automatically by the operation of a computer or other information technology system when a native file is created, modified, transmitted, deleted, or otherwise manipulated by a user of such system.

7.    "**Media"** means an object or device, real or virtual, including but not limited to a disc, tape, computer, or other device on which data is or was stored.

8.    "**Optical Character Recognition**" or "**OCR**" means the optical character recognition file which is created by software used in conjunction with a scanner that is capable of reading text-based Documents and making such Documents searchable using appropriate software.

9.    "**Hash Value**" is a unique numerical identifier that can be assigned to a file, a group of files, or a portion of a file, based on a standard mathematical algorithm applied to the characteristics of the data set. The most commonly used algorithms are known as MD5 and SHA-1.

10.    "**Confidentiality Designation**" means the legend affixed to Documents for confidential discovery information as defined by, and subject to, the terms of the Protective Order.

11.    "**Searchable Text**" means the native text extracted from an Electronic Document and any Optical Character Recognition text ("**OCR text**") generated from a Hard-Copy Document or electronic image.

12.    "**Load File**" means an electronic file provided with a production set of document images that facilitate the loading of such information into a receiving Party's document review platform, and the correlation of such data in the platform.

13.    "**Unitization**" means a set of paper-scanned images or electronically processed files and indicates where individual pages or files belong together as Documents, including attachments, and where each Document begins and ends.

**III.**     **DATA SOURCES AND CULLING CRITERIA**

1.    **Custodians.** The Parties agree to meet and confer regarding the identity of custodians whose ESI will be preserved, reviewed, and produced pursuant to this Protocol, along

with the date filters for each proposed custodian ("custodian date filters"). The custodian list and date filters will be subject to the Producing Party's ongoing good faith efforts to identify the custodians most likely to have information that is relevant or responsive to requests for production. The Parties have agreed on an initial set of twenty-two custodians that are identified on Exhibit B. The Parties reserve the right to request a reasonable number of additional custodians whose relevance was discovered via documents or data produced or testimony given subsequent to the initial agreement on the list of custodians whose ESI will be searched. The Parties will meet and confer regarding the addition of any custodians as necessary and appropriate. Any disagreements between the Parties regarding the custodian list and/or custodian date filters that cannot be resolved through informal means may be submitted to the Court for resolution.

2.      **Custodian Data Sources.** The Parties agree to meet and confer to identify the ESI sources that will be searched for each custodian identified pursuant to ¶ III.1 above. Such ESI sources will include email accounts (if available), as well as such other electronic sources as are reasonably likely to contain relevant, material, and non-duplicative information, as may be indicated through interviews of the identified custodians, subject to the proportionality factors set forth in Rule 26(b)(1).

3.      The parties agree to preserve and search the following sources for each custodian on the initial finalized list referenced in ¶ III(1), above, to the extent each custodian identifies the sources as potentially containing relevant information, subject to the proportionality factors set forth in Rule 26(b)(1):

a.  The hard copy files of identified custodians;

b.  The local drives, cloud-based storage, and personal file shares of identified custodians, including document storage on Microsoft Teams;

c.  The active and archived (if available) email accounts of identified custodians, including any locally available PST files only if there is a reasonable basis to believe that a locally available PST file is available and contains discoverable information that is not contained in the custodian's cloud-based O365 mailbox;

d.  The active file server directories (i.e., shared drives) used by each identified

custodian to store electronic records;

e.   Any Company-issued or Company-provided phones or other devices containing instant or text messages, including Microsoft Teams messages;

f.   Home computers, phones, or other devices, if there is a reasonable basis to believe the custodian regularly used their home computer, phone, or other device to perform work for, or communicate with, the Company using non-Kraft-Heinz-owned systems or applications (as detailed in ¶ 6 of the Company's Personal Electronic Device Usage Policy) and did not document or store the communications or work on an appropriate Kraft Heinz system or application of record. Review of content within Kraft-Heinz-owned systems or applications (as detailed in ¶ 6 of the Company's Personal Electronic Device Usage Policy) need not take place on home computers, phones, or other devices if the same information is available on a Kraft-owned device otherwise subject to (a) through (e) and (g) of this paragraph.  Unless otherwise agreed to by the Parties, the understanding is that these devices will not be imaged but, rather, searched by the individual custodian, in consultation with counsel, in such cases; and

g.   The backup or archive systems of any of the above.

4.   To the extent any of the identified custodians are in possession of hard copy files that are reasonably likely to contain relevant, material, and non-duplicative information, the Producing Party may have such materials scanned and included in its ESI review or may choose to manually review such materials instead.

5.   **Non-Custodial Sources of Parties.** Subject to the Parties' objections and responses to Requests for Production of Documents, for any request where the responsive Documents or ESI are available from a non-custodial source, the Parties will undertake reasonable efforts to identify non-custodial sources that may contain responsive ESI. These sources may include departmental paper files, shared drives, databases, employee portals, shared computers, collaborative workstation terminals, and other electronic collaborative workspaces or other document management and human resources systems. The Parties agree to meet and confer regarding the identification,

collection, and production format for non-custodial sources.

6.    **Timeframe.** The Parties agree that, subject to the Parties' objections and responses to Requests for Production of Documents or other discovery objections, the preservation obligations of the Parties set forth in this Order apply to Documents and ESI generated, received, or created on or after January 1, 2012. The Parties also agree that, subject to the Parties' objections and responses to Requests for Production of Documents or other discovery objections, the search and production obligations of the Parties set forth in this Order may apply to Documents and ESI generated, received, or created on or after January 1, 2012, except as otherwise agreed among the Parties or upon further order of the Court for good cause shown. The Parties agree to meet and confer in good faith regarding the timeframe applicable to searches and productions which may include running the report described in Section III.8 to include ESI with timeframes agreed to by the Parties. Nothing in this paragraph limits a Party's ability to object to the timeframe of a particular discovery request or to challenge the timeframe limitations set forth in a Party's objections and responses to Requests for Production of Documents or limits either Party's ability to seek court intervention for a dispute over the proper timeframe for a particular discovery request.

7.    **Search Queries and Methodologies.** The Parties agree that they will meet and confer regarding the formulation of appropriate search queries and methods to be used to cull potentially responsive or relevant ESI. The Parties will continue to meet and confer regarding any search process issues as necessary and appropriate. Without waiving their right to conduct appropriately targeted searches of Hard-Copy Documents, the Parties agree that search queries will not be used to cull collected Hard-Copy Documents prior to review.

8.    If either Party wishes to use Boolean keyword searches to cull the universe of Electronic Documents and/or ESI to be reviewed, the Producing Party shall run the proposed search terms on an agreed upon set of custodians' O365 mailboxes (including active and, subject to the Producing Party's objections based on relevance and proportionality, offline mailboxes) which, at minimum, will include witnesses identified in Defendant's December 15, 2021 Initial Disclosures (see Exhibit B) and, upon agreement of the Parties, run a report showing (i) the number of documents in the document collection against which the search was conducted; (ii) the "hit count"

of the raw number of documents identified per search term; and (iii) the total number of unique documents with hits across all search terms and documents within families containing such unique documents (e.g. the review universe if all terms were to be accepted and reviewed). As set forth in ¶ III.9 below, this is not intended to obviate the need for production of known, non-privileged responsive documents that do not contain any of the proposed search terms, subject to the Producing Party's objections. After running the aforementioned report, the Producing Party will share the report with the Receiving Party and the Parties agree to meet and confer to tailor the use of search strings so as to effectively identify potentially responsive material.

9. **Email Threading.** The Parties agree that they may use email threading to narrow the universe of documents for review. Where the most inclusive email—i.e., the latest email in a chain—is responsive and non-privileged, the Parties may elect to produce only the most inclusive email. However, where the most inclusive email contains only privileged or non-responsive information, the Parties may also elect to produce the latest email in the chain that contains all of the responsive, non-privileged information from the chain. This Order does not change the Parties' obligation to produce responsive, non-privileged "branches" of an email chain that (1) are not included in the most inclusive email or (2) contain at least one attachment that is different than the attachment(s) to the most inclusive email. This Order also does not change the Parties' obligation to produce a reasonable number of threaded emails separately, upon request.

10. **Technology Assisted Review ("TAR")**. The Producing Party may use technology assisted review, machine learning, or analytics tools to cull the document universe.  Prior to using TAR, the Producing Party will confer with the Receiving Party in good faith regarding the use of TAR in an attempt to establish a mutually agreed upon workflow, but such conferral will not unreasonably impede the Producing Party's use of TAR.

11. **Production of Known Responsive Documents.** Nothing in this Order relieves a Party, subject to its right to object under Fed. R. Civ. P. 26, to produce known responsive documents (e.g., Plaintiffs' personnel files) or, if privileged, identified on a privilege log consistent with ¶ V.1 below, regardless of whether they contain search terms or have been classified as responsive via predictive coding or TAR.

12. **Proprietary Software.** To the extent that native files are produced that require proprietary software for access and review, the Parties agree to meet and confer regarding the issue and the Producing Party shall make reasonable efforts to facilitate the Receiving Party's review of the files or may make such files available for review in an alternative format.

13. **Password Protected Files.** The Parties agree to utilize commercially reasonable efforts to open password-protected or encrypted files and to meet and confer regarding such efforts.

14. **System Files**. The Parties may exclude system-generated files and folders that are not likely to contain user-created files from their review (e.g., by DeNISTing).

15. **De-Duplication Across Custodians**. The Producing Party is only required to produce a single copy of a responsive Document, and the Producing Party shall make reasonable efforts to de-duplicate responsive Electronic Documents and ESI (based on MD5 or SHA-1 Hash Values at the document level) across custodians. The fields upon which the Hash Value of emails are calculated shall be disclosed by the Producing Party. The Producing Party will provide a Duplicate Custodian field in the production Load File sufficient for the Receiving Party to identify each custodian of a particular document that was eliminated through de-duplication as well as the file path in which the document was kept in the ordinary course in the duplicate custodian's files. If all recipient custodians are documented for removed documents in the Duplicate Custodian field, the Producing Party need only produce a single copy of the particular document; however, the Receiving Party may request a reasonable number of duplicate copies identifying particular custodians. For emails with attachments, the Hash Value shall be generated based on the parent-child document grouping, and only email messages in which the parent document and all attachments are exactly the same will be considered duplicates. For Documents, prior drafts of documents will not be considered duplicates, although the Parties acknowledge that a draft of a document may be responsive while a final copy is not, and vice-versa. The Custodian, FilePath, and EmailFolder will be included (for all available copies of a responsive Electronic Document) in the respective CUSTODIAN(S), FILEPATH(S), and EMAIL_FOLDER(S) fields in the production Load File. In addition, if the email files were collected directly from the

Microsoft Exchange server, outlook.ost files may be excluded from  processing as duplicative of outlook.pst files unless only the .ost file version is available.

## IV.    FORMAT OF PRODUCTION

1.    **Non-Redacted ESI Not Produced in Native  Form**. In the event there is a loss of functionality resulting from the processing of ESI, the Parties will meet and confer to discuss how to resolve the functionality concerns.  ESI will be produced in  single-page, black and white, 300 DPI, Group IV TIFF image file format together with  Concordance Load Files, with searchable extracted text of the Document (at the document level in a .TXT file) and  the Metadata fields listed in Exhibit A, if applicable (except that the Parties agree that Metadata fields may be redacted on any basis permissible under the Fed. R. Civ. P., so long as redactions are identified as such and are consistent with Rule 26(b)(5)(A)(ii) of the Fed. R. Civ. P). If documents, such as email, are produced, the relationship between related  documents (e.g., email attachments) should be preserved, to the extent it is available. All non-privileged Electronic Documents attached to  an email should be produced contemporaneously and sequentially immediately after the parent email to the extent feasible.

2.    **ESI to be Produced in Native Form**. Non-redacted  Excel files, .CSV files, other similar spreadsheet files, presentation (e.g., PowerPoint) files, and audio or video media files, or other  similar  file  formats  where  an  image  file  does  not  adequately  represent the files as maintained in the ordinary course, shall be produced in their Native Format (to the extent available), including the  formulae embedded in the spreadsheet and any Metadata contained in the file. The Parties agree to produce all documents with track changes visible. If a Receiving Party has reason to believe that a document contains tracked changes but those changes are not visible, a Party may request a reasonable number of Word documents to be produced in Native form with comments or tracked changes. The producing Party reserves the right to object if the requests become unreasonably onerous. Files produced in  Native  Format shall be named either with a  sequential Bates number followed by  the  file  extension  or with a sequential Bates number followed by the Confidentiality Designation, if  applicable, and the file extension. A placeholder TIFF with language "Document Produced in  Native" or similar language shall be included for each native

STIPULATION AND [~~PROPOSED~~] ORDER REGARDING PRODUCTION OF ESI

file produced. To the extent native files, including electronic spreadsheets, are redacted, production shall be made in TIFF format in  accordance with the "Redacted Documents"section. To the extent other file formats present specific challenges, the Parties agree to cooperate in good faith to address the format in which those documents should be produced.

3. **Redacted Documents**. The Parties may redact Documents or ESI on the following bases: attorney-client privilege; attorney work-product privilege; other applicable privilege or immunity from disclosure; privacy concerns flowing from Personally Identifiable Information; trade secrets; information within affirmative action plans for protected categories other than race or disability; or non-relevant language in agreements with third-parties. Such redactions, as appropriate, shall be indicated consistent with the Protective Order. The Parties will include tags in the text of the document and in the Metadata indicating (1) Privileged Material Redacted, or (2) Personally Identifying Information/Demographic Redacted; (3) Trade Secret /Third-Party; or (4) Non-Race Affirmative Action. If the Parties identify additional documents for redaction that do not qualify for any of the aforementioned categories/tags, the Parties agree to confer in good-faith on additional redaction categories/tags in an attempt to establish additional agreed-upon redaction categories/tags. For redacted  Electronic Documents, the Parties agree to produce as redacted single-page, black and white Group IV  TIFF images with Metadata contained in a separate file. If an Electronic Document is produced in redacted form, the Metadata fields listed in Exhibit A shall be produced for a redacted Electronic Document consistent with Rule 26(b)(5)(A)(ii) of the Fed. R. Civ. P. Neither Party waives the right to object to relevance redactions or based on any other factor set forth in this Paragraph.

4. **Hard-Copy Documents**. Hard-Copy Documents should be produced as single-page, black and white Group IV TIFF images (300 DPI resolution) with coded data contained in a  separate file. The  Producing  Party  shall also provide  document-level OCR text files to accompany the TIFF format production. The minimum fields for a scanned Hard-Copy  Document record will be BEGBATES, ENDBATES, BEGATTACH, ENDATTACH, CUSTODIAN indicating the beginning and ending Bates numbers, attachments ranges of all documents, and the custodian information. Hard-copy documents shall be OCR'd and the OCR  text shall be

provided as one .TXT file per document.

5. **Document Unitization for Hard-Copy Documents**. If a Hard-Copy Document consists of more than one page, the Unitization of the Document and any attachments shall be maintained as it existed in the original Document, so that each document will not be split, but instead the pages thereof shall be sequenced and saved together, as they existed in the original. In the event a Document is produced that contains an affixed note, such as Post-Its, the Requesting Party may request for the Document to be re-produced without the affixed note and the Producing Party will make a good faith effort to re-produce the Document without the affixed note.

6. **Databases, Structured and/or Application ESI**. Subject to a Producing Party's objection under Rule 26(b)(1) of the Fed. R. Civ. P, the Parties agree to produce responsive ESI from any relevant database, structured and/or  application ESI in a reasonably useable production format. The Parties agree to meet and confer  regarding the appropriate format(s) for production to enable review by the Parties. Nothing in this paragraph limits the Requesting Party from challenging a Producing Party's Rule 26(b)(1) or other objection.

7. **Social Media**. Relevant ESI from social media websites (e.g., LinkedIn, Facebook,  Twitter, Instagram) may be produced by capturing responsive information through "screenshots" or "screen captures"  and  converting  the  same  into  images  along  with corresponding  OCR or extracted  text.  In the event such screenshots or screen captures do not capture all relevant and responsive information, the Producing Party shall use reasonable efforts, and to the extent a party has control of the social media account, to perform a bulk exports of the accounts, such as by exporting a profile from LinkedIn or downloading a copy of an individual's Facebook data and archive.

8. **Bates Numbering**. Each page of a produced image shall have a unique Bates number electronically "burned" on the image at a location that does not unreasonably obliterate  or obscure any information from the source Document. Each TIFF image or native file assigned  a Bates number shall be assigned a Bates number that is unique and maintains consistent pagination across the entire document production. Other than a Bates number, no other legend or stamp will be placed on the document  image other than confidentiality legends (where applicable) or

1    redactions. The Parties acknowledge that production of multiple documents at once may at times

2    result in a Bates number that obliterates or obscures information, and the Parties agree to work

3    together in good faith to address specific issues as they arise.

4        9.    **Confidentiality**. Electronic data produced in discovery may be labeled with

5    Confidentiality Designations pursuant to the Protective Order. In the  case of TIFF images,

6    confidentiality legends shall be "burned" on the image at a location that  does not unreasonably

7    obliterate or obscure any information from the source document. The Parties acknowledge that

8    production of multiple documents at once may at times result in a confidentiality branding that

9    obliterates or obscures information, and the Parties agree to work together in good faith to address

10   specific issues as they arise. For  materials produced in Native Format, the producing party shall

11   supply fielded data identifying  the confidential treatment of each document designated for

12   confidentiality or shall name the file with  the Bates number followed by the Confidentiality

13   Designation and the file extension. A failure to make a designation through fielded data or a

14   naming of the file may be corrected by  notifying the other side of the mistaken designations of

15   confidential materials. Furthermore, nothing in this Order is intended to waive the protections set

16   forth in the Protective Order.

17       10.    **Color Documents.** Documents in color need not be produced in color as a matter

18   of course except where production in color is apparently necessary to fully comprehend the

19   document (e.g., where categories are distinguished by different colors of text or where the

20   document is not otherwise readable). A Party may request that a reasonable number of specifically

21   identified documents (e.g., social media posts) be produced in a color .PDF or .JPG format.

22   Documents produced in color shall be produced as JPEG images, 300 dpi or higher and 24-bit color

23   depth.  Each color document image shall be named with the unique Bates number of the first page

24   of the document followed by the extension "JPG."  An image identification file shall be provided

25   containing a row of information for every image included in the production. The format of the file

26   should be industry standard IRP format (LFP), Concordance Image format (OPT) or other delimited

27   file format using common ASCII (American Standard Code for Information Interchange)

28   characters for field identification that includes one row of information for each image with fields

for image Bates number, relative path to the image, image filename, page number, and document start identifier to designate the first page of a document.

11.    **ESI Date and Time Processing:** Each Party's ESI should be processed using a consistent time zone—Coordinated Universal Time (UTC)—for all data associated with a particular custodian. The Producing Party shall share the time zone selected for processing of its data with the Receiving Party.

12.    **Production Media**. Documents shall be produced through secure file transfer protocols (e.g., FTP) or similar secure  electronic transmission. The Bates number range(s) of the materials shall be included on the production media label or, where it is not practicable to do so, in an accompanying letter or email. If a Producing Party encrypts or "locks" a production, the Producing Party shall send, under separate correspondence, the password for decrypting the production.

## V.    PRIVILEGE AND WORK PRODUCT CLAIMS

1.    **Privilege Log**. The Parties recognize that Documents may be redacted or withheld on the grounds of attorney-client privilege, work-product doctrine, or other applicable privilege or immunity from disclosure (collectively, "privilege"). The Parties agree that if the following documents are privileged, they need not be included on a privilege log: (a) privileged materials created by or at the request of the Parties' outside counsel as part of the investigation, prosecution, or defense of this case; (b) internal communications within the law firm representing Plaintiffs or those non-attorneys acting at the direction of counsel acting (or that previously acted) in its capacity as counsel for Plaintiff or within the legal team acting (or that previously acted) in its capacity representing the Defendant or those non-attorneys acting at the direction of counsel acting (or that previously acted) in its capacity as counsel for Defendant; and (c) privileged communications  between a Party, including their in-house counsel, and their outside counsel concerning the investigation, preparation, prosecution or defense of this case; and, (d) material that is protected by the attorney-client privilege, attorney work-product doctrines, or other applicable privilege based on an attorney-client or other privileged relationship with a non-party. The Parties believe that, where it is necessary to redact material in category "(d)," it will generally be obvious

from the context of the redactions that material in this category has been redacted. While the Parties will make reasonable efforts to identify these redactions, they will not be required to log them on a privilege log. Where material in category "(d)" is withheld from production entirely (e.g., where such material was attached to a responsive, non-privileged email), the Parties agree that a slip-sheet bearing the label "DOCUMENT WITHHELD DUE TO NON-PARTY PRIVILEGE OR WORK PRODUCT" will be produced in the document's place, and no Metadata for that document will be produced.

2.      The Parties further agree that the use of a categorical privilege log may be appropriate in this case. Unless the Parties mutually agree otherwise, within 90 days after the conclusion of each document production, or 45 days after the entry of this Order, whichever is later, the Producing Party will produce a privilege log in a Microsoft Excel workbook, listing the documents withheld from production, including, for each document, the basis for the claim of privilege, the Bates number, date, document type, description, author, recipients/senders. Inadvertent failure to log privileged documents or metadata will not result in the waiver of privilege, provided that upon discovering the inadvertent omission, the Producing Party sends to the Requesting Party an addendum to the appropriate privilege log providing the required privilege log entries for the document(s). The Parties agree that the privilege log for their last production will be produced no later than 14 days before the close of fact discovery in this matter.

3.      **Clawback Protection**. The productions of hard-copy documents and ESI are subject to the Parties' rights under the Protective Order, the rules and practices of this Court, Fed. R. Civ. P. 26(b)(5), and Federal Rule of Evidence 502, to request the return of inadvertently produced discovery. The Parties agree Pursuant to Fed. R. Evid. 502(d), the production of a privileged or work-product-protected document, whether inadvertent or otherwise, is not a waiver of privilege or protection from discovery in this case or in any other federal or state proceeding. For example, the mere production of privileged or work-product-protected documents in this case as part of a mass production is not itself a waiver in this case or in any other federal or state proceeding. The Parties agree that, if necessary, they will confer regarding whether a "quick peek" process pursuant to Fed. R. Civ. P. 26(b)(5) is appropriate for certain productions, but that otherwise

a "quick peek" is not anticipated.

## VI.   <u>MISCELLANEOUS</u>

1.   **Objections Preserved.** Nothing in this Order shall be interpreted to require disclosure of irrelevant information, information that the Court has ruled is not proportional to the needs of the case, or relevant information protected by the attorney-client privilege, work-product doctrine, or any other applicable privilege or immunity, including any basis set forth in Rule 26(b)(1) of the Fed. R. Civ. P. The Parties do not waive any objections as to the production, discoverability, admissibility, or confidentiality of hard-copy documents and ESI.

2.   **Costs.** This Order does not prohibit any Party from seeking costs or cost-sharing measures in the event that a particular discovery request is overly broad or unduly burdensome, or as otherwise allowed by the Federal Rules of Civil Procedure.

3.   **Protective Order**. All Documents containing Confidential Information produced by the Parties will be subject to the terms of the Protective Order, including but not limited to the terms regarding secure storage of Protected Material.

4.   **Modification**. This Order may be modified by a Stipulation of the Parties with approval of this Court or by the Court for good cause shown.

Dated: August 5, 2022                            Respectfully submitted,

*/s/ Felicia Gilbert*
FELICIA GILBERT (#276348)
MELISSA TRIBBLE (#339098)
Sanford Heisler Sharp, LLP
111 Sutter St., Suite 975
San Francisco, CA 94104
Telephone: (415) 795-2020
Email: fgilbert@sanfordheisler.com
Email: mtribble@sanfordheisler.com

SABA BIREDA (*pro hac vice*)
JAMES HANNAWAY (*pro hac vice*)
Sanford Heisler Sharp, LLP
700 Pennsylvania Avenue, S.E. 20003
Telephone: (202) 499-5200
Email: sbireda@sanfordheisler.com

1

Email: jhannaway@sanfordheisler.com

2

EDWARD CHAPIN (#53287)

3

CARA VAN DORN (#321669)
Sanford Heisler Sharp, LLP

4

2550 Fifth Ave., 11th Floor
San Diego, CA 92103

5

Telephone: (619) 577-4253

6

Email: echapin@sanfordheisler.com
Email: cvandorn@sanfordheisler.com

7

8

*Attorneys for Plaintiffs*
ALEX   HORN,   LANCE   ATYMAN,   and

9

KEITH HOOKER

10

*/s/ Michele Haydel Gehrke*

11

MICHELE HAYDEL GEHRKE (#215647)
Reed Smith LLP

12

101 Second Street, Suite 1800
San Francisco, CA 94105

13

Telephone: (415) 543-8700

14

Email: mgehrke@reedsmith.com

15

JILL S. VOROBIEV (*pro hac vice*)
Reed Smith LLP

16

10 South Wacker Drive
Chicago, IL 60606

17

Telephone: (312) 207-1000

18

Email: jvorobiev@reedsmith.com

19

20

AMANDA E. BROWN (*pro hac vice*)
Reed Smith LLP

21

2850 N. Harwood Street, Suite 1500
Dallas, Texas

22

Telephone: (469) 680-4232

23

Email: aebrown@reedsmith.com

24

*Attorneys for Defendant*
KRAFT HEINZ FOODS COMPANY LLC

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**EXHIBIT A**

| Field | Definition | Doc |
|---|---|---|
| SOURCE | Name of party producing the document | All |
| CUSTODIAN(S) | Names of person or other data source (non-human) from where documents/files are produced; *Where redundant names occur, individuals should be distinguished by an initial which is kept constant throughout productions (e.g., Smith, John A. and Smith, John B.)* | All |
| BEGBATES | Beginning Bates Number (production number) | All |
| ENDBATES | End Bates Number (production number) | All |
| PGCOUNT | Number of pages in the document | All |
| FILESIZE | File Size | All |
| APPLICAT | Commonly associated application for the specified file type | All |
| FILEPATH(S) | Original file/path of the locations where the item resided at the time of preservation; This should include location, file name, and file source extension | All |
| NATIVEFILELINK | File path for documents provided in native format | All |
| TEXTPATH | File path for OCR or Extracted Text files | All |
| FILE NAME | Original file name of the item | All |
| FILETYPE | Application that created the file (e.g., Word, Outlook, Excel, Adobe) | All |
| FILE EXTENSION | Extension of the file (e.g., .docx, .pdf, .xlsx, .msg) | All |
| EMAIL FOLDER(S) | Folder location of the email within the .PST/.OST | Email |
| FROM | Sender | Email |
| TO | Recipient | Email |
| CC | Additional Recipients | Email |
| BCC | Blind Additional Recipients | Email |
| SUBJECT | Subject line of email | Email |
| PARENTBATES | BEGBATES number for the parent email of a family (will not be populated for documents that are not part of a family) | Email |
| ATTACHBATES | Bates number from the first page of each attachment | Email |

| BEGATTACH | First Bates number of family range (i.e., Bates number of the first page of the parent email) | Email |
|---|---|---|
| ENDATTACH | Last Bates number of family range (i.e., Bates number of the last page of the last attachment) | Email |
| DATESENT (mm/dd/yyyy hh:mm:ss AM/PM) | Date Sent | Email |
| DATERCVD (mm/dd/yyyy hh:mm:ss AM/PM) | Date Received | Email |
| EMAILDATSORT (mm/dd/yyyy hh:mm:ss AM/PM) | Sent Date of the parent email (i.e., physically top email in a chain) | Email |
| HASHVALUE | MD5 hash value (or an alternatively agreed upon hash value) for email, attachments, and electronic documents, computed at the time of processing | All |
| TITLE | Internal document property | Electronic Data |
| AUTHOR | Creator of an Electronic Document | Electronic Data |
| DATECRTD (mm/dd/yyyy hh:mm:ss AM/PM) | Creation Date | Electronic Data |
| LASTMODD (mm/dd/yyyy hh:mm:ss AM/PM) | Last Modified Date | Electronic Data |
| LASTMODBY | Last Modified By | All |
| Redacted | For documents that contain redactions, tags indicating (1) Privileged Material Redacted or (2) Personally Identifying Information Redacted | All |
| ProdVol | Name of media that data was produced on | All |
| Confidentiality | Confidentiality level if assigned pursuant to any applicable Protective Order or stipulation | All |

**EXHIBIT B**

Initial Custodian List

Alex Horn

Lance Aytman

Keith Hooker

Brian Bettencourt

Laura Burns

Donald Dorsey

Lino Vidal

Pat Portner

Achristalyn Hernandez

Doris Trujillo

Sheri Gaunt

David Bogan

Emma Bittner

Jacob Perez

Donald Brown

Annette Harper

Leo Coleman

Larry Ficken

Chad Buechel

Patricia Melendez

Ana Chavez

Debbie Vlotho

1

**ORDER**

2

The Court adopts the parties' Stipulation Regarding Production of Electronically Stored

3

Information ("ESI") filed on August 5, 2022.  (Doc. 49.)

4

5

IT IS SO ORDERED.

6

7

Dated:   **August 9, 2022**                      /s/ *Barbara A. McAuliffe*

8

UNITED STATES MAGISTRATE JUDGE

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28